PEOPLE v BIDDLES

Docket No. 326140. Submitted May 3, 2016, at Detroit. Decided June 30,
2016, at 9:00 a.m.

Clifford L. Biddles was convicted following a jury trial in the Wayne
Circuit Court of being a felon in possession of a firearm, MCL
750.224f. Defendant's conviction arose from an altercation that
occurred outside an apartment complex when codefendant
Charles Johnson shot and killed an individual who had ap-
proached defendant and codefendant Johnson. According to a
witness, defendant was seen holding a firearm after codefendant
Johnson fired his weapon. The court, Cynthia Gray Hathaway, J.,
sentenced defendant as a fourth-offense habitual offender to 76 to
156 months of imprisonment. Defendant appealed.

The Court of Appeals *held*:

1. In *People v Lockridge*, 498 Mich 358 (2015), the Supreme
Court decided that the mandatory nature of Michigan's legisla-
tive sentencing guidelines constrained a sentencing court's dis-
cretion and that the use of judicially found facts to score the
mandatory guidelines violated a defendant's Sixth Amendment
right to have a jury decide beyond a reasonable doubt facts that
influenced the defendant's sentence. The *Lockridge* Court rem-
edied these problems by making the sentencing guidelines advi-
sory only. In this case, defendant argued both that his offense
variable (OV) scores were not supported by sufficient evidence
and that because his sentence was based on the mandatory
sentencing guidelines, the use of judicially found facts to score his
OVs—facts not supported by jury-found facts or by defendant's
admissions—violated his Sixth Amendment rights. The Court of
Appeals determined that considering a claim such as defendant's
required the Court to first conduct an analysis of defendant's
evidentiary challenges to his OV scores. If a reviewing court
concludes that the trial court erred in scoring a defendant's OVs
and that this error resulted in a change in the recommended
minimum sentence range and the need to resentence the defen-
dant for that reason, the court's review has ended and there is no
need to proceed to an analysis under *Lockridge*. In this case,
because the trial court clearly erred in the number of points it

assessed for OV 1, MCL 777.31; OV 3, MCL 777.33; OV 4, MCL 777.34; and OV 9, MCL 777.39, defendant's *Lockridge* claim was moot and the Court did not need to address it. Because the change in OV level as a result of the corrected OV scores placed defendant in a different cell on the Class E sentencing grid, defendant was entitled to be resentenced.

2. A defendant's right to a fair trial is compromised when a trial judge's conduct during trial pierces the veil of judicial impartiality. To determine whether a trial court's conduct reaches the level of piercing the veil of judicial impartiality, the Court of Appeals must make a fact-specific inquiry under the totality of the circumstances. The Court must analyze the nature of the judicial misconduct, the trial judge's tone and demeanor, the scope of the misconduct in light of the length and complexity of the trial, the extent to which the trial judge directed his or her misconduct to one side more than the other, and the delivery of any curative instructions. In this case, the trial judge's conduct did not pierce the veil of judicial impartiality. The trial judge properly managed the trial, ruled on objections, limited excessive and improper questioning of witnesses, and did not interject more frequently in one party's presentation of its case than the other's. Finally, the trial judge properly instructed the jury that the court's inquiries or actions were not evidence and that the judge did not interject herself into the trial process with the intention of influencing the jury.

Conviction affirmed, sentence vacated, and case remanded for resentencing.

RONAYNE KRAUSE, J., concurring in part and dissenting in part, agreed with the majority's resolution of defendant's challenge to the trial court's conduct, but disagreed with its analysis of the sentencing issue. The construction of a framework distinguishing evidentiary challenges from constitutional challenges was unnecessary and not supported by caselaw. Defendant asserted that the trial court's scoring of the OVs lacked evidentiary support and presented the challenge as a *Lockridge* violation. Because the trial court's scoring of the OVs relied on facts found by the court, defendant was entitled to the remand procedure outlined in *Lockridge*.

CRIMINAL LAW — FELONY SENTENCING — LEGISLATIVE SENTENCING GUIDELINES — OFFENSE VARIABLES — EVIDENTIARY SUPPORT.

When a defendant challenges the evidentiary support for his or her offense variable (OV) scores and the court finds an error that changes the defendant's recommended minimum sentence range,

resentencing is required, any *People v Lockridge*, 498 Mich 358
(2015), sentencing challenge is moot, and there is no need to
conduct a *Lockridge* analysis or order a remand under *United
States v Crosby*, 397 F3d 103 (CA 2, 2005); even though *Lockridge*
created a new review procedure for appeals of sentences imposed
under the mandatory sentencing guidelines, a sentencing appeal
may still be decided solely on the basis of the evidence presented
in support of the defendant's OV scores.

*Bill Schuette*, Attorney General, *Aaron D. Lind-
strom*, Solicitor General, *Kym L. Worthy*, Prosecuting
Attorney, *Jason W. Williams*, Chief of Research, Train-
ing, and Appeals, and *Deborah K. Blair*, Assistant
Prosecuting Attorney, for the people.

*Neil J. Leithauser* for defendant.

Before: MURPHY, P.J., and CAVANAGH and RONAYNE
KRAUSE, JJ.

MURPHY, P.J. Defendant was convicted by a jury of
being a felon in possession of a firearm (felon-in-
possession), MCL 750.224f, and he was sentenced as a
fourth-offense habitual offender, MCL 769.12, to 76 to
156 months' imprisonment. Defendant appeals as of
right, challenging his conviction and sentence. We
affirm defendant's conviction, vacate his sentence, and
remand for resentencing.

I. FACTUAL BACKGROUND

Defendant and his cousin, codefendant Charles
Johnson, were both charged with second-degree mur-
der, MCL 750.317, assault with intent to commit
murder, MCL 750.83, possession of a firearm during
the commission of a felony, MCL 750.227b, and felon-
in-possession, MCL 750.224f, in connection with the
shooting death of Timothy Kirby and the assault of
Kirby's nephew, Christopher Johnson, which occurred

outside the victims' apartment complex. The prosecution presented evidence that the victims were inside the apartment and defendant and codefendant Johnson were among a group "partying" outside when Kirby heard someone say that he had been stabbed. When Christopher Johnson and Kirby went outside to investigate, they encountered defendant, and Kirby inquired about what was occurring. According to Christopher Johnson, defendant responded by asking if the victims "got a beef" and signaling to codefendant Johnson, who then approached the men, brandished a handgun, and shot toward the victims as they fled. Codefendant Johnson, testifying on defendant's behalf,[1] admitted that he had quickly approached the victims after they said something to defendant, pulled his handgun, and fired three or four shots, killing Kirby. Codefendant Johnson denied that defendant had motioned or signaled to him and described defendant as being in shock after codefendant Johnson fired his gun. The jury convicted defendant of felon-in-possession—there was evidence that defendant was observed holding a gun after the shooting by codefendant Johnson had concluded—but it acquitted him of the additional charges.

## II. TRIAL COURT'S CONDUCT

Defendant argues that he is entitled to a new trial because the trial judge's comments to defense counsel during his cross-examination of the officer in charge deprived him of a fair trial. We disagree.

"The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law

---

[1] Defendant and codefendant Johnson were tried together. Midway through trial, codefendant Johnson pleaded guilty to all charges against him and then testified for defendant.

that this Court reviews de novo." *People v Stevens*, 498
Mich 162, 168; 869 NW2d 233 (2015). A defendant
must overcome "a heavy presumption of judicial impar-
tiality" when claiming judicial bias. *People v Jackson*,
292 Mich App 583, 598; 808 NW2d 541 (2011) (quota-
tion marks and citation omitted). To determine
whether the trial judge's conduct deprived defendant of
a fair trial, we consider whether the trial judge's
"conduct pierce[d] the veil of judicial impartiality."
*Stevens*, 498 Mich at 164, 170. "A judge's conduct
pierces this veil and violates the constitutional guar-
antee of a fair trial when, considering the totality of the
circumstances, it is reasonably likely that the judge's
conduct improperly influenced the jury by creating the
appearance of advocacy or partiality against a party."
*Id*. at 171. This is a fact-specific inquiry, and we must
consider the cumulative effect of any errors. *Id*. at
171-172. A single instance of misconduct generally
does not result in the appearance that a trial judge is
biased unless the instance is "so egregious that it
pierces the veil of impartiality." *Id*. at 171. To evaluate
the totality of the circumstances, we consider a variety
of factors, including

> the nature of the judicial conduct, the tone and demeanor
> of the trial judge, the scope of the judicial conduct in the
> context of the length and complexity of the trial and issues
> therein, the extent to which the judge's conduct was
> directed at one side more than the other, and the presence
> of any curative instructions. [*Id*. at 172.]

Initially, defendant points to the trial judge's remark
that defense counsel might "get a spanking." After the
trial judge had sustained one of the prosecutor's objec-
tions to defense counsel's questions, defense counsel
asked, "May we approach on something before I get to
this area just in case you--[.]" At that point, the trial

judge interjected, "Just before you get a spanking." Although this comment would have been better left unsaid, the judge seemed to be acknowledging defense counsel's reason for approaching the bench. During the preceding line of questioning, the trial judge had sustained the prosecutor's objections and had intervened on at least nine occasions, attempting to explain to defense counsel why his questions were improper and needed to be rephrased. Although the judge made the challenged statement in a jesting manner, the clear intent of the comment was that defense counsel could approach the bench in an attempt to avoid being interrupted and corrected yet again. Considering the trial judge's comment in context, we cannot conclude that the isolated and flippant statement influenced the jury.

Defendant next directs our attention to additional exchanges between defense counsel and the trial judge that defendant alleges demonstrate bias. For instance, defendant claims that the judge thwarted counsel's attempts to ask the officer in charge if he had made "a deal" with a witness, if defendant was charged in this case because he was untruthful, and when the arrest warrant was issued. It is well established that the trial court has a duty to control trial proceedings in the courtroom and has wide discretion and power in fulfilling that duty. See *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006). Although a defendant has the right to cross-examine his accusers as secured by the Confrontation Clause, US Const, Am VI, a court has wide latitude to impose reasonable limits on cross-examination to ensure relevancy or because of concerns regarding such matters as harassment, prejudice, confusion of the issues, and repetitiveness. *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). A court must "exercise reasonable control over

the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." MRE 611(a).

The trial judge's remarks were not of such a nature as to unduly influence the jury. The record shows that the trial judge appropriately exercised her authority to control the trial and prevent excessive and improper questioning of the officer. The judge aptly noted that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." See MRE 602. In addition, the trial judge interrupted various questions by defense counsel that called for speculation and were repetitive and argumentative. Defendant has provided no explanation, argument, or authority indicating how any of the evidentiary objections were improper and not in accordance with MRE 611(a). Rather, defendant focuses on the trial judge's interruptions and apparent growing frustration with defense counsel, but fails to acknowledge that defense counsel talked back to the judge and ignored the judge's directives to move on and rephrase questions, which necessitated many of the judge's repeated interruptions.

Next, defendant complains about the trial judge's comments in the following passage, which occurred as defense counsel questioned the officer:

*Q.* Did you testify in the case?

*A.* Yes.

*Q. And you sat there in the witness chair?*

*A. Yes.*

*Q. As a witness?*

*A. Yes.*

*The Court*: [Counsel,] *why do you drag things out?*

*[Defense Counsel]*: It's my approach. *Can I just be me[?]*

*The Court*: No, because it is getting to be argumentative and you know that the rules of evidence don't allow arguments.

*[Defense Counsel]*: *I'm not being argumentative.* [Emphasis added.]

Defendant fails to acknowledge defense counsel's unnecessary and inane questions of the officer and counsel's improper and disrespectful response to the judge's ruling and statements in the above colloquy. In sum, considering the totality of the circumstances, including defense counsel's questions, the trial judge's interruptions and remarks were reasonably measured and were focused on enforcing the rules of evidence. They were not calculated to pierce the veil of judicial impartiality and were unlikely to unduly influence the jury to defendant's detriment. In addition, it does not appear from the record that the trial judge interjected more frequently during the defense's improper questioning of the witnesses than during the prosecution's examinations. Finally, the trial judge explained to the jury that she had a responsibility to ensure that the trial was run efficiently and fairly. At the beginning of trial and at the close of the proofs, the judge instructed the jury that the case must be decided solely on the basis of the evidence, that the judge's comments and rulings were not evidence, that the judge was not trying to influence the jury's vote or express a personal opinion about the case when making a comment or ruling, and that if the jury believed that the judge had an opinion, that opinion had to be disregarded. These instructions weigh against a conclusion that the trial

judge pierced the veil of judicial impartiality and
deprived defendant of a fair trial. *Stevens*, 498 Mich at
190. We also cannot help but note that defendant was
acquitted by the jury of murder, assault, and felony-
firearm charges, seriously calling into question defen-
dant's claim that judicial bias improperly influenced
the jurors to his detriment. Defendant has not demon-
strated that the trial judge's conduct deprived him of a
fair trial.

### III. SENTENCING

Defendant poses, broadly speaking, a two-pronged
attack against the sentence imposed by the trial court.
First, defendant presents a challenge regarding the
adequacy of the evidence supporting the court's scoring
of several offense variables (OVs): OV 1, MCL 777.31;
OV 3, MCL 777.33; OV 4, MCL 777.34; and OV 9, MCL
777.39. We shall refer to this argument as defendant's
"evidentiary challenge." Second, defendant presents a
constitutional argument under *People v Lockridge*, 498
Mich 358; 870 NW2d 502 (2015), contending that the
trial court engaged in impermissible judicial fact-
finding with regard to the same OVs. We shall refer to
this argument as defendant's "constitutional chal-
lenge."

Each of defendant's challenges has its own distinct
remedy. With respect to the evidentiary challenge, if
the trial court clearly erred by finding that a prepon-
derance of the evidence supported one or more of the
OV scores or otherwise erred by applying the facts to
the OVs, *People v Hardy*, 494 Mich 430, 438; 835 NW2d
340 (2013), and if the scoring error resulted in an
alteration of the minimum sentence range, he would be
entitled to resentencing, *People v Francisco*, 474 Mich
82, 89; 711 NW2d 44 (2006). On the other hand, a

*Crosby* remand[2] under *Lockridge* is not the same remedy as remanding a case for resentencing because of an error in applying the guidelines. In *Lockridge,* our Supreme Court set forth the parameters of a *Crosby* remand, stating:

> [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the "circumstances existing at the time of the original sentence." [*Lockridge,* 498 Mich at 398, quoting *United States v Crosby,* 397 F3d 103, 117 (CA 2, 2005).]

Accordingly, a *Crosby* remand results in *the possibility* of resentencing, whereas, in the context of a successful evidentiary challenge, resentencing is actually ordered by the appellate court. Of course, post-*Lockridge,* any resentencing will have to be conducted pursuant to the principles enunciated in *Lockridge,* primarily the directive that the guidelines are now advisory only. *Lockridge,* 498 Mich at 365. When this Court is presented with an evidentiary *and* a constitutional challenge regarding the scoring of the guidelines, the evidentiary challenge must initially be entertained, because if it has merit and requires resentencing, the constitutional or *Lockridge* challenge becomes moot—a defendant will receive the protec-

---

[2] This is a reference to *United States v Crosby,* 397 F3d 103 (CA 2, 2005).

tions of *Lockridge* when he or she is resentenced. And if an evidentiary challenge does not succeed, then and only then should we entertain the constitutional challenge. Therefore, we disagree with any assertion that defendant's evidentiary challenge need not be reached because his constitutional challenge under *Lockridge* is worthy of a *Crosby* remand.[3]

The fact that a trial court engaged in judicial fact-finding is not relevant to the inquiry into an evidentiary challenge.[4] The constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself; it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a *mandatory* minimum sentence range. *Lockridge* remedied this constitutional violation by making the guidelines *advisory*, not by eliminating judicial fact-finding. As explained by the Court in *Lockridge*:

> Th[e] deficiency is the extent to which the guidelines *require* judicial fact-finding beyond facts admitted by the

---

[3] In *People v Sours*, 315 Mich App 346; 890 NW2d 401 (2016), this Court recently addressed an evidentiary challenge regarding OV 19, MCL 777.49 (interference with the administration of justice), as well as a constitutional challenge under *Lockridge* concerning OV 19. The *Sours* panel first analyzed the evidentiary challenge, concluding that the assessment of 10 points for OV 19 was improper, that OV 19 should have been assessed zero points, that the scoring error altered the minimum sentence range, and that, accordingly, the defendant was entitled to resentencing. *Sours*, 315 Mich App at 350-351. Moving on to the defendant's constitutional challenge, this Court held that "[b]ecause we conclude that OV 19 should have been scored at zero points and that defendant is entitled to be resentenced, defendant's *Lockridge* issue is now moot, and we need not address it." *Id.* at 351. Our analysis is entirely consistent with the *Sours* approach.

[4] We note that the panel in *Sours* did not find it problematic, when addressing the evidentiary challenge, that the lower court had engaged in judicial fact-finding in scoring OV 19. See *Sours*, 315 Mich App at 348-350.

defendant or found by the jury to score offense vari-
ables . . . that *mandatorily* increase the floor of the guide-
lines minimum sentence range, i.e., the "mandatory mini-
mum" sentence . . . .

To remedy the constitutional violation, we sever MCL
769.34(2) to the extent that it makes the sentencing
guidelines range as scored on the basis of facts beyond
those admitted by the defendant or found by the jury
beyond a reasonable doubt mandatory. We also strike
down the requirement in MCL 769.34(3) that a sentencing
court that departs from the applicable guidelines range
must articulate a substantial and compelling reason for
that departure.

Consistently with the remedy imposed by the United
States Supreme Court . . . , we hold that a guidelines
minimum sentence range . . . is advisory only and that
sentences that depart from that threshold are to be
reviewed by appellate courts for reasonableness. To pre-
serve as much as possible the legislative intent in enacting
the guidelines, however, we hold that a sentencing court
must determine the applicable guidelines range and take
it into account when imposing a sentence. [*Lockridge*, 498
Mich at 364-365 (citations omitted).]

That judicial fact-finding remains part of the process
of calculating the guidelines is evidenced by the *Lock-
ridge* Court's observation that its "holding today does
nothing to undercut the requirement that the highest
number of points possible *must be* assessed for all OVs,
*whether using judge-found facts or not.*" *Id.* at 392 n 28
(second emphasis added). This quote from *Lockridge* is
consistent and reconcilable with the full *Lockridge*
opinion; judicial fact-finding is proper as long as the
guidelines are advisory only.[5] Our point is further
buttressed by the Supreme Court's following discus-
sion:

---

[5] In *People v Blevins*, this Court found parts of *Lockridge* irreconcil-
able and noted that another panel of the Court had indicated that

First, the defendant asks us to require juries to find the facts used to score all the OVs that are not admitted or stipulated by the defendant or necessarily found by the jury's verdict. *We reject this option.* The constitutional violation can be effectively remedied without burdening our judicial system in this manner, which could essentially turn sentencing proceedings into mini-trials. And the United States Supreme Court . . . expressly rejected this remedy because of the profound disruptive effect it would have in every case. . . . "It would alter the judge's role in sentencing." We agree. [*Lockridge*, 498 Mich at 389 (citation and punctuation omitted; emphasis added).]

Absent the use of an admission or stipulation or a jury's factual findings to assess a defendant's OVs, the only remaining avenue available to score the OVs entails judicial fact-finding, which is of no constitu-

judicial fact-finding "constitutes a departure." *People v Blevins*, 314 Mich App 339, 362 n 8; 886 NW2d 456 (2016), quoting *People v Stokes*, 312 Mich App 181, 196; 877 NW2d 752 (2015). The *Blevins* Court concluded that *Stokes* set forth this judicial fact-finding versus departure distinction in reconciling *Lockridge*. *Blevins*, 314 Mich App at 362 n 8. We do not read *Stokes* as even acknowledging a possible irreconcilable feature of *Lockridge*, let alone attempting to reconcile parts of *Lockridge*. The *Blevins* panel's conclusion that *Lockridge* contained language that was difficult to reconcile was predicated on footnote 28 in *Lockridge*, wherein the Court stated that all OVs must be assessed the highest number of points possible "whether using judge-found facts or not," and the *Lockridge* Court's comments on page 399 that, to show plain error, "a defendant must demonstrate that his or her OV level was calculated using facts beyond those found by the jury or admitted by the defendant . . . ." *Blevins*, 314 Mich App at 362, 362 n 8, citing *Lockridge*, 498 Mich at 392 n 28, 399. We do not find any conflict in the language. As we discussed earlier in this opinion, footnote 28 of *Lockridge* indicates that judicial fact-finding continues to play a role in scoring the guidelines, and the language on page 399 of *Lockridge* merely provides the analytical framework for determining whether a defendant is entitled to a *Crosby* remand when the guidelines were mandatory at the time of sentencing. We do not find that *Blevins* is controlling here, given that *Blevins* was strictly a case involving a constitutional challenge under *Lockridge*, and because the commentary in footnote 8 of the *Blevins* opinion was dicta.

tional consequence if the guidelines are merely advisory. Accordingly, we disagree with any contention that a trial court can only use facts determined by a jury beyond a reasonable doubt when calculating a defendant's OV scores under the guidelines. This is in direct contradiction of the *Lockridge* Court's rejection of the defendant's argument that juries should be required to find the facts used to score the OVs. *Lockridge*, 498 Mich at 389.

At this juncture, we find it necessary to address the comments in the concurring/dissenting opinion, in which our colleague indicates that she does not understand our analytical framework for evaluating "evidentiary" versus "constitutional" challenges and that it does not make sense to her. It appears that the concurrence/dissent is of the view that the only relevant inquiry relates to *Lockridge* and whether a *Crosby* remand is necessary. The concurrence/dissent fails to appreciate that, as mentioned earlier, aside from the constitutional challenge under *Lockridge*, defendant *separately* argues that there was inadequate evidence to support the number of points assessed under the pertinent OVs. The concurrence/dissent conflates the evidentiary and constitutional challenges. The evidentiary challenge cannot simply be ignored, and in *People v Sours*, 315 Mich App 346, 348-351; 890 NW2d 401 (2016), this Court proceeded exactly as we are doing here, resolving the evidentiary challenge first and then moving on to the constitutional challenge, which was rendered moot in *Sours* because resentencing was dictated in light of the successful evidentiary challenge. The issuance of *Lockridge* did not result in depriving a defendant of presenting a traditional evidentiary challenge to a trial court's scoring of the guidelines, even if the scoring was also constitutionally problematic under *Lockridge*; a

defendant would be free to forgo the constitutional challenge or embrace it in conjunction with the evidentiary challenge. Stated otherwise, evidentiary challenges to OV scores for sentences imposed pre-*Lockridge* are not irrelevant or moot simply because the scoring may also have violated the constitutional protections recognized in *Lockridge*. And again, the remedies for successful evidentiary and constitutional challenges are distinct.[6]

Next, with respect to defendant's evidentiary challenge, the only OV that is *initially* pertinent is OV 3, which was scored at 100 points. Defendant's total OV score was 155 points, placing him at OV Level VI, which is the highest OV level in the Class E grid applicable to the firearm offense of which he was convicted. MCL 777.16m; MCL 777.66. Indeed, a total OV score of 75 or more points is all that is needed to be placed at OV Level VI. MCL 777.66. And OVs 1, 4, and 9, as assessed against defendant, add up to 45 points, which if subtracted from defendant's total OV score of 155 points leaves a total of 110 points, and defendant would remain at OV Level VI. Therefore, even if all three of these OVs were improperly assessed and

---

[6] Perhaps the concurrence/dissent believes that, for example, because an OV was scored on the basis of improper judicial fact-finding under *Lockridge* in the context of mandatory sentence ranges, any challenge to that particular OV score on the basis that there was generally insufficient evidence in the record to support the judge's OV assessment need not be addressed or is not viable, forcing sole consideration of the applicability of *Lockridge*. However, that view fails to recognize that the inadequacy of the evidence can serve as a separate appellate argument, with resentencing as the available remedy, or that argument can be made together with a *Lockridge* constitutional argument, as in this case, or a defendant could simply and solely present a constitutional challenge. It is a strategic decision to be made by the defendant. Our analytical framework is intended to give direction when both an evidentiary and a constitutional argument are made on appeal.

should have been scored at zero points, it would not alter the guidelines range, making resentencing unnecessary. *Francisco*, 474 Mich at 89 n 8 ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required."). However, OV 3 was assessed at 100 points; therefore, it is necessary to examine the scoring of OV 3.

OV 3 addresses physical injury to a victim, and a score of 100 points is mandated where "[a] victim was killed," MCL 777.33(1)(a), so long as the "death results from the commission of a crime and homicide is not the sentencing offense," MCL 777.33(2)(b). Defendant contends that his conduct related to the felon-in-possession conviction did not cause or result in anyone's death. See *People v Laidler*, 491 Mich 339, 345; 817 NW2d 517 (2012) ("Because the Legislature in MCL 777.33(2)(b) used the phrase '*results* from the commission of a crime,' it is clear that the defendant's criminal actions must constitute a factual cause of a death for purposes of OV 3."). OV 3 also provides that "[i]n multiple offender cases, if 1 offender is assessed points for death or physical injury, all offenders shall be assessed the same number of points." MCL 777.33(2)(a). Codefendant Johnson, who pleaded guilty during the trial to the charges against him and then testified on defendant's behalf, was assessed 100 points for OV 3 in an earlier sentencing.[7] The sentencing record in defendant's case is simply unclear regarding whether the trial court assessed 100 points for OV 3 on the basis of the multiple-offender provision, MCL

---

[7] Codefendant Johnson's plea encompassed the crime of second-degree murder, which constitutes homicide, and therefore he was not assessed 100 points for OV 3 relative to that crime, see MCL 777.33(2)(b), but guidelines for codefendant Johnson were also scored for the offense of assault with intent to commit murder, and he was assessed 100 points for OV 3 on that crime.

777.33(2)(a), or on the basis of a straightforward application of the facts pertaining to defendant's conduct, MCL 777.33(2)(b), or on both bases. Regardless, neither provision supports the assessment of 100 points for OV 3.

First, this was not a multiple-offender case because defendant was acquitted of second-degree murder, assault with intent to commit murder, and felony-firearm, because the felon-in-possession conviction was based on evidence apart from the shooting, and because codefendant Johnson was convicted by plea of the crimes for which defendant was acquitted. See *People v Johnston*, 478 Mich 903, 904 (2007); *People v Morson*, 471 Mich 248, 260 n 13; 685 NW2d 203 (2004) (rejecting the argument that "the multiple offender provision does not require a comparison of the OV scores for identical crimes," and noting that comparison is to be made to "OV scores received for a specific offense"). Had defendant been convicted of assault with intent to commit murder as was his codefendant, then an assessment of 100 points for OV 3 would have been proper.[8] However, the multiple-offender provision in OV 3 was not implicated in this case.

Next, looking solely at defendant's conduct, our analysis of whether "[a] victim was killed," MCL 777.33(1)(a), and whether the "death result[ed] from

---

[8] We note that the guidelines were not scored for codefendant Johnson regarding his conviction of felon-in-possession, considering his convictions of higher offenses. See *People v Lopez*, 305 Mich App 686, 690-692; 854 NW2d 205 (2014). Interestingly, had 100 points been the proper score for OV 3 on the basis of the multiple-offender provision, there would not have been a constitutional or *Lockridge* problem because the death or killing would have been established through codefendant Johnson's plea to second-degree murder. Also, defendant's gun possession was separate from codefendant Johnson's possession and discharge of his firearm.

the commission of a crime," MCL 777.33(2)(b), does not support a conclusion that the death in this case resulted from or was factually caused by defendant's commission of the offense of felon-in-possession, *Laidler*, 491 Mich at 345.[9] "[T]he offense variables are scored by reference only to the sentencing offense, except where specifically provided otherwise." *People v McGraw*, 484 Mich 120, 129; 771 NW2d 655 (2009). OV 3 does not specifically provide otherwise; therefore, we can only take into consideration defendant's sentencing offense for purposes of scoring OV 3. See *People v Mushatt*, 486 Mich 934 (2010). The record reflects that defendant's conviction of felon-in-possession was based on the testimony of a witness who, after the shooting, observed a man wearing a white shirt holding a gun and codefendant Johnson's testimony that defendant was wearing a white shirt at the time of the incident. There was no evidence, let alone a preponderance of it, establishing a causal connection between defendant's crime of felon-in-possession and Kirby's death. To the extent that the trial court relied on MCL 777.33(2)(b) in assessing 100 points for OV 3, it clearly erred. *Hardy*, 494 Mich at 438. On examination of the remaining provisions in OV 3 regarding life-threatening, permanently incapacitating, or bodily injuries, none would apply, considering the lack of a causal link between defendant's felon-in-possession offense and Kirby's death. MCL 777.33(1)(c) through (e). The scoring error results in an alteration of the minimum sentence range, thereby entitling defendant to resentencing, *Francisco*, 474 Mich at 89, at which time he will receive the constitutional protection of advisory guidelines as dictated by *Lockridge*. As in *Sours*, 315 Mich App at 351,

---

[9] Defendant did stipulate that he was a convicted felon when the shootings occurred.

because defendant is entitled to be resentenced, his constitutional challenge under *Lockridge* is now moot and need not be addressed.

The remaining OV scores now become relevant under our analysis for purposes of resentencing and the correct placement of defendant in the Class E grid. With respect to OV 1, defendant's challenge of the 25-point assessment was waived at sentencing, see *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000); however, defendant also presents an ineffective-assistance claim on the matter, and we agree that counsel's performance was deficient in waiving a challenge to OV 1 and that defendant was prejudiced by counsel's error, see *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001); see also *Francisco*, 474 Mich at 89 n 8. Twenty-five points is properly assessed for OV 1 when "[a] firearm was discharged at or toward a human being . . . ." MCL 777.31(1)(a). OV 1's multiple-offender provision is not implicated for the same reasons already set forth in addressing the multiple-offender provision in OV 3. Further, "OV 1 is an 'offense-specific' variable; therefore, in scoring OV 1, [a] trial court [is] limited to 'considering the sentencing offense alone.' " *People v Chelmicki*, 305 Mich App 58, 72; 850 NW2d 612 (2014), quoting *McGraw*, 484 Mich at 127. Here, there was no evidence that defendant's possession of the gun, which was used to support the felon-in-possession conviction, entailed defendant's discharge of the weapon, let alone discharging it at or toward a human being. The trial court thus clearly erred by assessing 25 points for OV 1, defense counsel's performance in waiving an argument relative to OV 1 was deficient, and defendant was prejudiced because the waived error altered the minimum guidelines range, MCL 777.66. We do note that a five-point score for OV 1 is proper when "[a] weapon was dis-

played . . . ." MCL 777.31(1)(e). Given that resentencing is already necessary in this case, we direct the trial court on resentencing to entertain the question whether five points should be assessed for OV 1.[10]

With respect to OV 4, defendant was assessed 10 points, which is the proper score when "[s]erious psychological injury requiring professional treatment occurred to a victim[.]" MCL 777.34(1)(a). Because OV 4 does not specifically provide otherwise, we are limited to solely considering the sentencing offense of felon-in-possession when scoring OV 4. *McGraw*, 484 Mich at 129. The record contains no evidence that serious psychological injury occurred to a victim as a result of defendant's status as a felon and his being seen carrying a gun after the shooting; OV 4 should have been scored at zero points. The trial court clearly erred by assessing 10 points for OV 4.

Finally, defendant was assessed 10 points for OV 9, which is the proper score for OV 9 when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death[.]" MCL 777.39(1)(c). The *McGraw* Court specifically held that OV 9 can only be scored in reference to the sentencing offense. *McGraw*, 484 Mich at 133-134. In the instant case, defendant's commission of the offense of felon-in-possession, in and of itself, simply did not place anyone in danger of physical injury or death. Accordingly, the trial court clearly erred by assessing 10 points for OV 9, which should have been scored at zero points.

We affirm defendant's conviction, vacate his sentence, and remand for resentencing consistent with this opinion. We do not retain jurisdiction.

---

[10] Even if five points is a proper score for OV 1, the resulting 20-point error in scoring OV 1, as opposed to a 25-point error, would still lower the minimum guidelines range. MCL 777.66.

CAVANAGH, J., concurred with MURPHY, P.J.

RONAYNE KRAUSE, J. (*concurring in part and dissenting in part*). I write separately because I respectfully do not understand the majority's resolution of defendant's sentencing issue. In particular, in the specific context of an alleged violation of *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), I do not understand the majority's construction of a framework for evaluating "evidentiary" as opposed to "constitutional" challenges. I fully agree with the majority's resolution of defendant's challenge to the trial court's conduct. I likewise concur with the majority's recitation of the basic facts of the case.

Defendant contends that the trial court improperly scored Offense Variables (OVs) 1, 3, 4, and 9 of his sentencing guidelines pursuant to MCL 777.31, MCL 777.33, MCL 777.34, and MCL 777.39, respectively. He further asserts that his trial counsel was ineffective for failing to object to the scoring of OV 1. Defendant argues that his scores lack the requisite evidentiary support, and he presents that challenge as a *Lockridge* violation. We review de novo issues of constitutional law, including whether the trial court engaged in judicial fact-finding. *People v Stokes*, 312 Mich App 181, 192; 877 NW2d 752 (2015).

In *Lockridge*, our Supreme Court held that Michigan's mandatory sentencing guidelines violated a defendant's Sixth Amendment right to a jury trial to the extent that the guidelines required judicial fact-finding beyond facts admitted by a defendant or found by the jury beyond a reasonable doubt and that this judicial fact-finding improperly increased the floor of a defendant's minimum sentence range. *Lockridge*, 498 Mich at 364-365; *Stokes*, 312 Mich App at 193-194. Our

Supreme Court appeared to hold that judicial fact-finding was not impermissible per se, but rather it was impermissible in the context of *mandatory* minimum sentence ranges. This Court has reconciled certain statements in *Lockridge* by determining that judges may score the guidelines on the basis of facts they found, independently of a jury's verdict or a defendant's admissions, on the theory that doing so constituted a departure, which now needs only to be justified as reasonable. *Lockridge*, 498 Mich at 365. Our Supreme Court did not, however, abrogate the requirement that a trial court departing from the recommended guidelines range articulate its reasons for that departure. See *id.* at 392. If the trial court's improper scoring of offense variables increased the floor of the guidelines minimum sentence range, the guidelines range was unconstitutionally constrained by a violation of the Sixth Amendment. *Id.*

The net effect as I understand it is as follows: (1) if the trial court imposed a sentence according to sentencing guidelines scored on the basis of facts the trial court found independently of the jury's verdict or the defendant's admissions, and (2) it did so under the belief that the resulting sentence range was mandatory, and (3) the guidelines minimum sentence range cannot be sustained on the basis of facts admitted by defendant or by the jury's verdict, (4) then the defendant has "establish[ed] a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Lockridge*, 498 Mich at 395. However, the trial court may rely on judicially found facts to depart from a minimum sentence range that is based on properly scored guidelines, and any such departure will be reviewed for reasonableness. *Lockridge*, 498 Mich at 392.

In *People v Sours*, 315 Mich App 346; 890 NW2d 401 (2016), the majority seems to imply that this Court distinguished between evidentiary and constitutional challenges under *Lockridge* by addressing the defendant's challenge to the trial court's scoring of OV 19 under MCL 777.49. I do not read *Sours* in the same way. In *Sours*, this Court noted that OV 19 requires either that the crime itself constitute some manner of interference with the administration of justice or that the defendant engage in conduct that in some way seeks to evade responsibility for illegal conduct. *Sours*, 315 Mich App at 349. The Court observed that the defendant's parole violation, for which he was not even apparently convicted in the proceeding that culminated in the *Sours* appeal, was neither of those things, and the *Sours* defendant was arrested for the actual sentencing offense, possession of methamphetamine, promptly upon discovery of the illegal substance. The defendant had no opportunity to make any attempt to evade justice. *Id.* at 350. In other words, there were no facts that could conceivably have supported scoring OV 19.

Here, there clearly *are* facts in the record that could support the OV scores assessed by the trial court. For example, OV 3 should be scored at 100 points if "a person was killed," MCL 777.33(1)(a), and indeed, a person *was* killed. At issue is whether, in context, those facts were *properly* found. I conclude that the OV scores calculated by the trial court could not have been based only on facts necessarily found by the jury or admitted by defendant, as I understand *Lockridge* requires when the trial court imposes a mandatory sentence range based on those scores. Defendant was convicted only of being a felon in possession of a firearm, so the jury was only required to find beyond a

reasonable doubt that defendant was armed with a weapon and was ineligible to possess it. See MCL 750.224f; see also *People v Perkins*, 473 Mich 626, 629-631; 703 NW2d 448 (2005). Defendant stipulated only that he was ineligible to possess a firearm at the time of the shooting. Each of the challenged OV scores in this case required a finding of at least one fact that was neither directly nor indirectly supported by the jury's verdict or defendant's admission.

The trial court scored OV 1 at 25 points, indicating that "[a] firearm was discharged at or toward a human being or a victim was cut or stabbed with a knife or other cutting or stabbing weapon . . . ." See MCL 777.31(1)(a). However, the jury's verdict required a finding that defendant *possessed* a firearm, but not that defendant *used* that firearm. Accordingly, OV 1 should not have been scored at 25 points. The trial court scored OV 3 at 100 points, indicating that "[a] victim was killed," MCL 777.33(1)(a). Although the trial court may consider other facts and injuries for the purpose of imposing sentence, OV scores must be based on " 'the sentencing offense alone.' " *People v Mushatt*, 486 Mich 934, 934 (2010), quoting *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). Again, nothing in the jury's verdict or defendant's admissions causally links his possession of a firearm to any death, so OV 3 should not have been scored at 100 points.

Likewise, OV 4 was scored at 10 points, indicating that "[s]erious psychological injury requiring professional treatment occurred to a victim," MCL 777.34(1)(a), and OV 9 was scored at 10 points, indicating that "2 to 9 victims . . . were placed in danger of physical injury or death, or 4 to 19 victims . . . were placed in danger of property loss," MCL 777.39(1)(c). Again, the jury did not necessarily find that any victim

existed or that a victim suffered or was placed in danger of injury as a result of defendant's possession of a firearm. Accordingly, these OVs should not have been scored at 10 points each.

The trial court scored the guidelines for defendant's conviction of being a felon in possession of a firearm, which is a Class E offense. MCL 777.16m. Defendant received a total OV score of 155 points. That score, combined with his prior record variable score of 70 points, placed him in the E-VI cell of the applicable sentencing grid, for which the minimum sentence range is 22 to 76 months for a fourth-offense habitual offender. MCL 777.66; MCL 777.21. The scores for OVs 1, 3, 4, and 9 increased defendant's total OV score from 10 points to 155 points, which, in turn, changed his placement on the grid from OV Level II (10 to 24 points) to OV Level VI (75+ points), resulting in a higher guidelines range. Because defendant was sentenced before our Supreme Court's decision in *Lockridge* and his placement in OV Level VI cannot be sustained on the basis of facts admitted by defendant or necessarily found by the jury, defendant has "establish[ed] a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Lockridge*, 498 Mich at 395. Because I understand that *all* OV scores might be considered for some purpose by the Department of Corrections, I disagree with the majority's conclusion that it is unnecessary to consider defendant's challenges to all of them.

My understanding of *Lockridge* is that because the trial court's scoring of the OVs was based on judicially found facts that increased the floor of the guidelines minimum sentence range, defendant is entitled to the *Crosby* remand procedure outlined in *Lockridge*.

*Stokes*, 312 Mich App at 197-203; *Lockridge*, 498 Mich at 395-399. On remand, the trial court should allow defendant an opportunity " 'to avoid resentencing by promptly notifying the [trial] judge that resentencing will not be sought.' " *Lockridge*, 498 Mich at 398, quoting *United States v Crosby*, 397 F3d 103, 118 (CA 2, 2005) (alteration in original). If the defendant does not wish to avoid resentencing, the court must determine if it "would have imposed a materially different sentence but for the unconstitutional constraint [considering] only the 'circumstances existing at the time of the original sentence.' " *Lockridge*, 498 Mich at 398, quoting *Crosby*, 397 F3d at 117. The trial court may consider the judicially found facts underlying its original scoring when determining if departure from the guidelines minimum sentence range is appropriate. See *Lockridge*, 498 Mich at 391-392 ("[T]he sentencing court may exercise its discretion to depart from that guidelines range without articulating substantial and compelling reasons for doing so. A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness."). If the sentencing court decides to depart from the guidelines minimum sentence range, it must state on the record its reasons for departure. MCL 769.34(3).

To be clear, I do not in any way wish to suggest that I believe the majority's reasoning is irrational, fallacious, or wrong. I do not agree with it only because it does not make sense to me. The majority's assertion that I somehow claim that "defendant's evidentiary challenge need not be reached" appears equally to fail to apprehend my own reading of *Lockridge* and *Sours*. It is my hope that further developments in the law will provide additional guidance.